**STATE of Missouri,
Plaintiff–Respondent,**

v.

**James WESTRICH,
Defendant–Appellant.**

**No. 57779.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 30, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 12, 1990.

Application to Transfer Denied
Jan. 9, 1991.

owner retrieved his .38 caliber pistol from behind the bar and fired upon the intruders. The man in the ski mask was shot four times and fled the bar. The other was shot once in the head and expired immediately. When the police arrived they found defendant lying in the alley. A ski mask was lying nearby. Inside the bar police found a knife near the dead man, who was identified as William Chronister, and a plastic toy gun near the spot where the man in the ski mask had stood. The ski mask found in the alley was later identified as being the same mask worn by the robber in the bar. Defendant was charged by indictment with second degree murder, because a death occurred during the attempted perpetration of a felony, and with attempt to commit first degree robbery. The jury convicted him on both counts. In addition, he was found to be a prior and persistent offender under § 558.016, RSMo 1986.

Charles M. Shaw, Shaw, Howlett & Knappenberger, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Presiding Judge.

Defendant appeals his convictions for the crimes of second degree felony murder, § 565.021(2), RSMo 1986, and attempted first degree robbery, § 564.011, RSMo 1986. The court found defendant to be a prior and persistent offender and sentenced him to twenty seven years imprisonment on the felony murder count, which included a two year sentence enhancement, and fifteen years on the attempted robbery count. The sentences were to be served concurrently. We affirm.

On February 4, 1988 at 11:00 p.m., two men entered the Peppermill Lounge in St. Louis. One was wearing a ski mask and flourished what appeared to be a weapon. The five witnesses gave conflicting testimony regarding who spoke but it appeared from the evidence that one of the two men announced that "this is a hold-up." The man in the ski mask ordered the owner of the bar and the waitress to get down. The

Defendant's principal point on appeal is that the trial court should have dismissed the indictment under which defendant was tried because the indictment did not contain the elements required for a valid indictment under Rule 23.01. Specifically defendant asserts that it "failed to apprise defendant of facts constituting an offense ... [and] failed to contain the essential and necessary elements...." We will reverse on such a claim only "if the indictment or information is so defective that by no reasonable construction can it be read to charge the [defendant] with the offense for which he was convicted." *State v. Puckett*, 782 S.W.2d 454, 455 (Mo. App.1990). The minimum requirements are that the indictment "contains all the essential elements of the offense as set out in the statute and clearly apprises defendant of the facts constituting the offense in order to enable him to meet the charge and to bar further prosecution." *State v. Garrett*, 627 S.W.2d 635, 637 (Mo. banc 1982) quoting from *State v. Strickland*, 609 S.W.2d 392, 395 (Mo. banc 1981). Initially we note that in defendant's brief he does not challenge the indictment under which he was tried. For this reason alone we could ignore this point, however, he did

challenge the proper indictment in his motion for a new trial.

■ The statute under which defendant was charged reads as follows:

"A person commits the crime of murder in the second degree if he: ... (2) commits or attempts to commit any felony and, in the perpetration or the attempted perpetration of such felony ... another person is killed as a result of the perpetration or attempted perpetration of such felony...." § 565.021.1(2), RSMo 1986.

The indictment must contain facts that allege two elements: 1) that the defendant was attempting to perpetrate a felony; and 2) that a person was killed as a result of the defendant's attempt. The indictment in the present case, while poorly written, does meet this minimal standard:

### COUNT I

The Grand Jurors of the City of St. Louis, State of Missouri, charge that the defendant, in violation of Section 565.-021.1(2), RSMo, committed the class A felony of murder in the second degree, punishable upon conviction under Section 588.011.1(1), RSMo, in that on the 4th day of February, 1988, in the City of St. Louis, State of Missouri, *WILLIAM CHRONISTER was killed by shooting him and as a result of the attempted perpetration of the class A felony of robbery first degree under Section 569.-020, RSMo committed by the defendant on February 4, 1988*, in the City of St. Louis, State of Missouri.

### COUNT II

The Grand Jurors of the City of St. Louis, State of Missouri, charge that the defendant in violation of Section 564.011, RSMo, committed the class B felony of an attempt to commit the offense of robbery first degree, punishable upon conviction under Section 558.011, RSMo, in that on the 4th day of February, 1988 the defendant entered the Peppermill Lounge along with William A. Chronister and announced a hold-up to the patrons and displayed what appeared to be a deadly weapon, and such conduct was a substantial step toward the commission of the crime robbery in the first degree, and was done for the purpose of committing such robbery. (Emphasis ours).

Rule 23.01(d) specifically approves of incorporation by reference of information from one count to another. See *Fults v. State*, 779 S.W.2d 688, 689 (Mo.App.1989). When read in its entirety the indictment fulfills its function to place defendant on notice of the charges against him and to recite the essential facts supporting those charges. Rule 23.11 provides that "no information shall be invalid because of any defect therein which does not prejudice the substantial rights of the defendant." We are unable to find that the rights of the defendant have been prejudiced.

Defendant next claims that the trial court erred in denying his motion for acquittal and in submitting the standard MAI jury instructions for second degree murder and attempted 1st degree robbery because the evidence was insufficient to submit the case to the jury. We disagree.

■ In testing the sufficiency of the evidence we must consider the evidence in the light most favorable to the State and all evidence and inferences to the contrary must be ignored. *State v. Newton*, 637 S.W.2d 805 (Mo.App.1982). In addition, we note that the instructions submitted to the jury must be supported by substantial evidence. *State v. Kroll*, 682 S.W.2d 78, 81 (Mo.App.1984). In this case the evidence was more than sufficient to support the denial of the Motion to Acquit and more than substantial enough to justify the instructions given.

■ Defendant's additional claim that instruction MAI 302.04 CR 3d (defining the state's burden of proof) incorrectly states the law is also without merit. Defining lack of reasonable doubt as "proof that leaves you firmly convinced of the defendant's guilt" has been specifically approved by the Missouri Supreme Court, *State v. Murray*, 744 S.W.2d 762, 771 (Mo. banc

1988), *cert. denied*, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988). Point denied.

■ Defendant also complains that the trial court erred in making the following comment:

[The Court]: The State now resting its case, the Court will be in recess, afterwhich [sic] the Defendant may commence their case.

Defendant objects to this statement because it allegedly "raised an expectation in the jury that a defense was supposed to be put on, thus compelling the defendant to put on evidence or endure the possibility of the jury drawing unfavorable inferences from his silence." Initially we note that the defendant made an opening statement prior to the introduction of any evidence in this case. Although defendant did not testify, he presented the testimony of five witnesses. Defendant relies on *State v. Lindsay*, 578 S.W.2d 903 (Mo. banc 1979) to support his argument. On voir dire the assistant Prosecuting Attorney said "[T]he burden of proof is on the State who I represent in this case and we must go forward with the evidence. Mr. Lindsay [defendant] doesn't have to go forward with any evidence if he doesn't wish to. He doesn't have to take the stand if he doesn't want to—" Article I, § 19 of the Missouri Constitution provides "That no person shall be compelled to testify against himself in a criminal cause. . . ." Relying on this clause the court reversed the convictions and remanded for a new trial. *Id.* at 904.

The statement here is more nearly like the statement of the prosecuting attorney in *State v. Terry*, 472 S.W.2d 426 (Mo. banc 1971). He said "[t]hat, in effect, will be what the State's evidence will show after which time the defendant will be free to offer any evidence he chooses; after which time I will return." In affirming, the supreme court said "The remark appears to be no more than a brief statement of the order in which the trial would proceed." *Id.* at 430. In *State v. Shanz*, 716 S.W.2d 472 (Mo.App.1986), during voir dire the prosecutor said "defendant may or may not present evidence, that is up to the defen-

dant to decide. . . ." *Id.* at 475. Our colleagues in the Southern District affirmed the conviction.

The statement in this case was made by the court and not a prosecutor. It was not a comment on defendant's failure to testify or his right to remain silent. It was only a statement of the order in which the trial would proceed. While in this case we fail to see any prejudice to the defendant, we would admonish trial courts to be especially careful in this area.

■ Defendant's other points have no merit. Defendant also alleges that he was prejudiced by the trial court's refusal to allow a second redirect examination of a defense witness. This witness, who was also a cousin of the deceased, testified that he knew the bar owner and had heard him say that "[the owner] followed a guy outside and shot the other guy." On recross the witness indicated that he had not told the police because he was afraid of the owner. Defendant claims that he should have been allowed to explore this fear in more detail in a second redirect examination.

■ The trial court has great discretion in determining the extent of redirect examination and its decision will be reversed only if defendant can show both an abuse of discretion and prejudice. *State v. Claypool*, 763 S.W.2d 313, 315 (Mo.App.1988). Our review of the transcript convinces us that further examination of this witness would have yielded little additional information. Point denied.

■ Defendant claims that the practice of sentence enhancement for persistent offenders operates as double jeopardy by punishing defendant twice for crimes committed in the past. "[T]he purpose and intent of the Persistent Offender Act was to impose longer sentences on defendants with felony records and to seek to deter subsequent crimes by the same offender." *State v. Arbeiter*, 664 S.W.2d 566, 570 (Mo. App.1983). The practice of sentence enhancement has been held by our supreme court to be a valid exercise of legislative

power. *State v. Reese*, 625 S.W.2d 130, 134 (Mo. banc 1981).

■ Defendant asserts that the trial court erred in refusing to give a defense instruction that required the jury to acquit unless it found that *William Chronister* (the victim) intended to commit robbery. There is no error in refusing this instruction since it misstates the law. *See State v. Brigham*, 709 S.W.2d 917, 922 (Mo.App. 1986). The defendant's final point is denied.

The judgment is affirmed.

STEPHAN and CRANE, JJ., concur.